IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ROBERT TIMOTHY HARLEY,

v.

Case No. 1:18-cv-396

WILLIAM BARR,
**Attorney General of the United States**
    **Defendant.**

## MEMORANDUM OPINION

Nearly thirty years ago plaintiff was involved in a domestic incident with his ex-wife and was convicted of misdemeanor assault and battery of a family member, in violation of Va. Code § 18.2-57.2. Under federal law, specifically 18 U.S.C. § 922(g)(9), plaintiff's 1993 misdemeanor domestic assault conviction makes it illegal for him to possess a firearm. Plaintiff, who, as the record reflects, has obeyed the law without incident since 1993, and who, as the record also reflects, has a long history of public service, now challenges the constitutionality of § 922(g)(9) as applied to him. Simply put, plaintiff argues that one misdemeanor conviction nearly thirty years ago should not preclude him from possessing a firearm for the rest of his life. He believes that under his specific circumstances, § 922(g)(9) unconstitutionally violates his Second Amendment right to keep and bear arms. Thus, he seeks summary judgment in his favor, a decision that would allow him to possess firearms legally again.

For its part, the government has moved for summary judgment, noting that each federal court of appeals to consider arguments like plaintiff's has rejected as-applied challenges to § 922(g)(9). In other words, according to the government, § 922(g)(9) has no good behavior exception or expiration provision and is not rendered unconstitutional simply because a former perpetrator of a domestic violence misdemeanor behaves himself for any particular period of time.

For the reasons that follow, the government's motion for summary judgment must be granted and plaintiff's motion must be denied.

## I.

The essential and material facts of this case are undisputed. They are as follows:

- In July of 1993, plaintiff was convicted in Fairfax County Juvenile and Domestic Relations Court of committing misdemeanor assault under Va. Code §18.2-57.2 following the entry of a guilty plea.

- This conviction arose after plaintiff called the Fairfax County Police Department and reported to the police that he and his then-estranged wife, Angela, had argued and gotten into a physical altercation.

- Plaintiff has not committed any other crimes since 1993.

- Plaintiff worked thirty (30) years for Fairfax County Public Works and was recognized for his contributions to the public upon his retirement.

- Plaintiff also served as a volunteer fireman/EMT for many years and was highly decorated for this service.

Because there is "no genuine dispute as to [these] material fact[s]" and because both parties have filed motions for summary judgment, at least one party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

## II.

The operative statutory subsection in this case, § 922(g)(9),[1] was added to the statute in 1997 after Congress recognized that existing felon-in possession laws "were not keeping firearms out of the hands of domestic abusers, because 'many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies.'" *United States v. Hayes*, 555 U.S. 415, 426 (2009) (quoting 142 Cong. Rec. 22,985 (1996) (statement of Sen. Lautenberg)). Section 922(g)(9) attempts to close this "'dangerous loophole,'" by extending the federal firearm prohibition to persons convicted of "'misdemeanor crime[s] of domestic violence.'" *Id.* (quoting 142 Cong. Rec. at 22,986 (statement of Sen. Lautenberg)) (alteration in original).

Plaintiff, having been convicted of misdemeanor family assault, plainly falls within the group of individuals Congress intended to preclude from possessing firearms. And because the facial validity of § 922(g)(9) has not been challenged here, nor has it been successfully challenged elsewhere,[2] the only issue presented in this case is whether § 922(g)(9) is unconstitutional as applied to plaintiff.

---

[1] 18 U.S.C. § 922(g)(9) provides that "[i]t shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition. . . ."

[2] *See, e.g., United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011) ("[Section] 922(g)(9) fits comfortably among the categories of regulations that *Heller* suggested would be presumptively lawful.") (internal marks and citation omitted); *United States v. Donovan*, 410 F. App'x 979, 981 (7th Cir. 2011) ("[W]e [have] upheld the categorical disarmament of domestic-violence misdemeanants such as Donovan."); *United States v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010) ("[A] disqualification-on-conviction statute such as § 922(g)(9) [] is generally proper."); *United States v. Smith*, 742 F. Supp. 2d 855, 869 (S.D.W. Va. 2010).

As the Third Circuit has noted, an as-applied challenge differs from a facial challenge because it "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011). As-applied challenges to the constitutionality of statutes are not uncommon and therefore it is not surprising that the Fourth Circuit has considered "the proper framework for deciding as-applied Second Amendment challenges." *United States v. Staten*, 666 F.3d 154, 158–59 (4th Cir. 2011) (discussing the two-step analysis for considering as-applied constitutional challenges and rejecting Staten's as-applied constitutional challenge to 18 U.S.C. § 922(g)(9)); *see also United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010) (adopting the two-step analysis for an as-applied challenge to 18 U.S.C. § 922(g)(9)) (citing *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)). Distilled to its essence, the Fourth Circuit's analytical framework for considering as-applied challenges to a statute under the Second Amendment asks first whether the statute infringes a fundamental constitutional right and second whether the statute prohibits conduct that fits reasonably within the government's stated interest or need.[3] *Id.*

### A.

The first step in the two-part analysis announced by *Chester* and *Staten* requires the district court to ask, "whether the challenged law imposes a burden on conduct falling

---

[3] The Fourth Circuit's two-step approach has been followed by the majority of other circuits that have considered as-applied challenges to statutes under the Second Amendment. *See, e.g., Stimmel v. Sessions*, 879 F.3d 198, 210 (6th Cir. 2018); *Fisher v. Kealoha*, 855 F.3d 1067, 1070 (9th Cir. 2017); *United States v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010).

within the scope of the Second Amendment's guarantee." *Chester*, 628 F.3d at 680. This is a "historical inquiry" that "seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification." *Id.* Analysis ends if the challenged law imposes a burden on conduct that falls outside the Second Amendment's protection as understood at the time of ratification; but the analysis proceeds if the challenged law prohibits conduct that would have been protected by the Second Amendment in 1791.[4] *Id.*

Most courts considering as-applied challenges to § 922(g)(9) have assumed, *arguendo*, that § 922(g)(9) prohibits conduct that would have been protected by the Second Amendment at the time of ratification[5] and therefore that domestic violence misdemeanants have intact Second Amendment rights that require "some measure of protection." *Staten*, 666 F.3d at 160. This sensible assumption avoids the historically complicated inquiry into whether the founding generation would have understood that persons convicted of domestic violence misdemeanors would no longer possess their right to bear arms as the result said conviction. On this record, there is no compelling historical evidence that domestic violence misdemeanants would have lost their right to possess weapons at the time of the ratification of the Second Amendment.[6] Thus, for purposes of the analysis here,

---

[4] The core right of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *D.C. v. Heller*, 554 U.S. 570, 635 (2008).

[5] The Fourth Circuit recognized in *United States v. Carter*, 669 F.3d 411, 416 (4th Cir. 2012) that it has avoided the first step analysis on three occasions by assuming without deciding that the individual at issue had protectable rights under the Second Amendment. See *Chester*, 628 F.3d at 683; *Staten*, 666 F.3d at 160; *United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011).

5

it is assumed that plaintiff's Second Amendment rights remain intact and therefore analysis properly proceeds to the second step of the Fourth Circuit's framework for deciding as-applied constitutional challenges. At this step, the government bears the burden of establishing that Congress's means, *i.e.* the categorical prohibition on possession of firearms by domestic violence misdemeanants, fits the end, *i.e.* the goal of protecting individuals from domestic gun violence. *Id.* at 161.

### B.

The second step in the Fourth Circuit's two-step analysis requires the district court to determine and apply "the appropriate form of means-end scrutiny." *Staten*, 666 F.3d at 159. In this respect, the appropriate level of scrutiny is intermediate scrutiny. *Id.* ("[W]e held that intermediate scrutiny is the appropriate standard to analyze a challenge to § 922(g)(9) under the Second Amendment."). Therefore, at step two the government must show "a reasonable fit between the challenged regulation and a substantial government objective." *Chester*, 628 F.3d at 683.

There is no doubt that the government has an important interest in protecting individuals from gun violence perpetrated by domestic abusers. In this respect, the Fourth Circuit has made unmistakably clear that § 922(g)(9) serves a substantial government objective and that § 922(g)(9) is reasonably tailored in the ordinary case to achieve the government's important goal of reducing domestic gun violence. In *Staten*, Judge

---

[6] In *Stimmel*, the Sixth Circuit noted that no historical evidence had been presented "establishing that individuals who physically abused their family members or intimate partners were historically restricted from bearing arms." 879 F.3d at 205.

Hamilton, joined by Judges Agee and Wynn, made clear that domestic gun violence is a serious problem in this country:

> [T]he "government has established that: (1) domestic violence is a serious problem in the United States; (2) the rate of recidivism among domestic violence misdemeanants is substantial; (3) the use of firearms in connection with domestic violence is all too common; (4) the use of firearms in connection with domestic violence increases the risk of injury or homicide during a domestic violence incident; and (5) the use of firearms in connection with domestic violence often leads to injury or homicide.

666 F.3d at 167. Given the seriousness of the problem Congress sought to remedy by passing § 922(g)(9), the *Staten* panel concluded that:

> These established facts along with logic and common sense compel us to hold that the government has carried its burden of establishing a reasonable fit between the substantial government objective of reducing domestic gun violence and keeping firearms out of the hands of: (1) persons who have been convicted of a crime in which the person used or attempted to use force capable of causing physical pain or injury to another against a spouse, former spouse, or other person with whom such person had a domestic relationship specified in § 921(a)(33)(A); and (2) persons who have threatened the use of a deadly weapon against such a person.

*Id.*

Although instructive here, the *Staten* decision left unresolved the precise question presented by plaintiff in this case, namely whether § 922(g)(9), as applied to an individual who has been a model citizen for thirty years but for one misdemeanor domestic violence conviction, impermissibly restricts conduct that falls outside the government's stated objective of reducing domestic gun violence. In other words, plaintiff challenges the link

7

between a thirty (30) year old misdemeanor conviction for domestic violence and any present threat plaintiff poses for committing domestic gun violence. Distilled to its essence, plaintiff contends that § 922(g)(9) is overinclusive as-applied to him.

The Fourth Circuit in *Hamilton* recently responded to a similar argument, noting that "evidence of rehabilitation, the likelihood of recidivism, and the passage of time" are insufficient to render an otherwise constitutional felon-in-possession statute unconstitutional. *Hamilton v. Pallozzi*, 848 F.3d 614, 629 (4th Cir.), cert. denied, 138 S. Ct. 500 (2017) (holding that plaintiff in that case, a state-law felon, could not rely on evidence of rehabilitation and passage of time to demonstrate that he had now become a law-abiding citizen and was entitled to the core protections of the Second Amendment). But the Fourth Circuit left open the question whether other sub-sections of § 922(g) might be subject to as-applied challenges based on similar arguments regarding passage of time and rehabilitation. *Id.* at 626, fn. 12 ("We expressly do not close these off as being potentially relevant inquiries in bringing as-applied challenges to other disarmament laws, for example, laws disarming the mentally ill such as 18 U.S.C. § 922(g)(4).").

In this regard, the Fourth Circuit in *Hamilton* specifically noted the Sixth Circuit's recent *en banc* decision in *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) (*en banc*), which held that the federal disarmament provision for the mentally ill, namely 18 U.S.C. § 922(g)(4), was unconstitutional as-applied to a person who was involuntarily committed thirty years ago during a brief episode of depression and had subsequently lived a mentally healthy, law-abiding life. *Id. Tyler* is, at first glance, helpful to plaintiff; however, upon closer inspection it is clearly distinguishable from this case.

8

*Tyler* involves § 922(g)(4), which precludes individuals who have been adjudicated "mentally defective" or who have "been committed to a mental institution" from possessing a firearm. As noted in *Tyler*, in the context of voluntary and involuntary mental health commitments, an individual can present persuasive medical evidence that he or she has recovered from a mental health defect and is no longer a threat to society. Because an individual can, on a case-by-case basis, demonstrate that he or she falls outside the intended reach of § 922(g)(4), the Sixth Circuit considered evidence of rehabilitation and passage of time. But in the context of § 922(g)(9), such evidence is irrelevant because unlike an individual with a diagnosed mental health condition, a domestic violence misdemeanant cannot demonstrate that he or she has been cured or has recovered from engaging in violent domestic abuse. To the contrary, social science data demonstrates that domestic abusers recidivate at significant rates and that oftentimes domestic abusers escalate the level of violence.[7] Therefore, the means/end analysis for § 922(g)(4) is different from the means/end analysis for § 922(g)(9).

The Fourth Circuit has never directly addressed the argument raised by plaintiff in this case, namely whether the passage of time combined with demonstrated rehabilitation invalidates an otherwise constitutional prohibition on the possession of firearms by misdemeanant domestic abusers. But importantly, several other circuits have addressed and rejected plaintiff's passage of time argument in the context of § 922(g)(9).[8] Especially

---

[7] *See* Exhibits 2, 3, 4 and 5 to Def.'s Mem. in Opp. to Pl.'s Mot. Sum. J. (Docs. 21-2, 21-3, 21-4 and 21-5).

[8] *See, e.g., Stimmel v. Sessions*, 879 F.3d 198, 210 (6th Cir. 2018) (rejecting plaintiff's constitutional challenge to § 922(g)(9) in 2018 based on his assertion that "he has lived a law-abiding life without

instructive in this regard is the Ninth Circuit's well-reasoned *Chovan* opinion. 735 F.3d 1127. There, the Ninth Circuit noted that the prohibited person had failed to present any evidence that a domestic abuser is "highly unlikely" to reoffend with the passage of time and, therefore given the government's evidence of high rates of recidivism amongst domestic abusers, "the application of § 922(g)(9) to Chovan [was] substantially related to the government's important interest of preventing domestic gun violence."[9] *Chovan*, 735 F.3d at 1142. Nor is *Chovan* the only case to reach this result; other courts to consider the issue, including the Sixth Circuit, have followed *Chovan*'s rationale for upholding § 922(g)(9) in the face of as-applied challenges based on the passage of time.[10] These courts have recognized that although § 922(g)(9) is admittedly broad, Congress "is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons," and that certain categorical prohibitions are necessary to achieve the government's significant objective of reducing gun violence in the home. *See Skoien*, 614 F.3d at 641. Because Congress's categorical, lifetime ban is reasonably tailored to its interest of protecting family members from gun violence by domestic abusers, plaintiff

---

additional convictions since 1997"); *Fisher v. Kealoha*, 355 F.3d 1067, 1071 (9th Cir. 2017) (holding that the mere fact that plaintiff's harassment conviction was twenty years old did not render § 922(g)(9) unconstitutional as applied to him); *United States v. Chovan*, 735 F.3d 1127, 1141-42 (9th Cir. 2013) (rejecting argument that § 922(g)(9) cannot constitutionally apply to a criminal defendant after fifteen years without a subsequent conviction).

[9] The government in this case, as it did in *Chovan*, submitted evidence including articles discussing social science studies that reflect that domestic abusers are likely to recidivate and even escalate their conduct. Unlike the plaintiff in *Chovan*, the plaintiff here has offered no evidence in support of his argument that the passage of time eliminates the risk of domestic gun violence.

[10] *See supra* fn. 6.

cannot obtain judicial relief for his problem; he may, however, be a candidate for executive action.[11]

In upholding § 922(g)(9)'s lifetime ban, the Sixth and Ninth Circuits have appropriately recognized that federal courts should not read expiration clauses or good behavior exceptions into otherwise constitutional regulations when there is no evidence that passage of time would alleviate the concern addressed by Congress.[12] In other words, where, as here, there is no evidence that passage of time makes domestic abusers less prone to violence and there is significant evidence that domestic abusers reoffend at significant rates, Congress can, within its discretion and within the bounds of the Constitution, preclude domestic abusers from possessing weapons for their lifetimes. Because Congress, in passing § 922(g)(9), created a regulation that has a reasonable relationship to its desired objective, *i.e.* eliminating domestic gun violence, it is improper to create a judicial exception that has no basis in the text of the statute. Because plaintiff's passage of time

---

[11] *See infra* fn. 12.

[12] In *Chovan*, the Ninth Circuit notes that plaintiff's as-applied challenge calls for a legislative or policy judgment rather than a judicial one:

> [I]f Chovan's as-applied challenge succeeds, a significant exception to § 922(g)(9) would emerge. If Congress had wanted § 922(g)(9) to apply only to individuals with recent domestic violence convictions, it could have easily created a limited duration rather than lifetime ban. Or it could have created a good behavior clause under which individuals without new domestic violence arrests or charges within a certain number of years of conviction would automatically regain their rights to possess firearms. But Congress did not do so. Congress permissibly created a broad statute that only excepts those individuals with expunged, pardoned, or set aside convictions and those individuals who have had their civil rights restored.

735 F.3d at 1142.

argument is a complex policy argument, it is, as the *Chovan* Court noted, more appropriately addressed legislatively than judicially. *See supra* fn. 11.

### III.

Absent legislative or executive action, plaintiff is subject to a lifetime firearm ban because § 922(g)(9) contains no sunset or good behavior clause and the Constitution does not demand that a misdemeanant domestic abuser be given his rights back simply because he exists for some time without incident. Given the grave importance of the government's interest in protecting men, women and children who are subject to violence in their own homes and given the evidence of recidivism amongst domestic abusers, § 922(g)(9)'s lifetime firearm ban on misdemeanant domestic abusers is reasonably tailored to the government's substantial interest.

Accordingly, plaintiff's motion for summary judgment must be denied and the government's motion must be granted.[13]

A separate order will follow.

Alexandria, Virginia
April 16, 2019.

/s/
T. S. Ellis, III
United States District Judge

---

[13] Although plaintiff loses his judicial challenge, not all is lost. Congress has provided four ways for domestic-violence misdemeanants to regain their right to possess a firearm:

1) The misdemeanant may have the conviction set aside,
2) The misdemeanant may have the conviction expunged,
3) The misdemeanant may have their civil rights restored, or
4) The misdemeanant may seek a pardon.
5)

*See* 18 U.S.C. § 921(a)(33). Thus, rather than seeking judicial relief, plaintiff may more appropriately seek political remedy.